# In re ROBERTSON.

## No. 422.

District Court, N. D. Texas, Lubbock Division.

Dec. 16, 1936.

A. V. Weaver, Jr., of Lubbock, Tex., for intervener, City of Lubbock.

W. D. Girand, Jr., of Amarillo, Tex., and Hugh Anderson, of Lubbock, Tex., for the bankrupt, Elisha Lennox Robertson.

DAVIDSON, District Judge.

In the above-entitled cause the question has arisen as to whether or not the stock of merchandise owned by the bankrupt at the time of the sale of his stock was subject to taxes to the City of Lubbock, it being insisted that a tax lien only applies to the particular property against which taxes were assessed; that the fixtures in the drugstore of the bankrupt were assessed; and that the City of Lubbock has a lien to secure the payment of taxes on fixtures, but that it cannot extend its lien against these fixtures so as to cover all of the taxes due by the bankrupt even though the fixtures brought a sufficient fund for that purpose; and it is further insisted that, in view of the fact that the stock of merchandise was assessed in a lump-sum valuation rather than item by item and since goods have been continuously bought and sold, it is now impossible to tell just what items are subject to the tax lien and what items are not; and that the City of Lubbock, therefore, has no lien for taxes on the "stock of merchandise." The City of Lubbock is a home rule city incorporated under that provision of the Constitution and has passed an ordinance attempting to fix a lien to secure the collection of taxes on all property subject to taxation both personal and real, regardless of whether on hand on January 1st or later acquired.

Section 104 of Title 11, United States Code Annotated (the Bankruptcy Act § 64, as amended), directs the court to pay all taxes regularly due before dividends to creditors. It further directs the classification of claims with reference to liens, providing for the costs of administration, wages due to workmen, debts owing to persons who are, under the laws of the United States or a state, entitled to prior classification.

The Constitution of the State of Texas, article 8, § 15, provides: "The annual assessment made upon landed property shall be a special lien. * * * All property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes * * * under such regulations as the Legislature may provide." The Constitution of Texas, article 11, § 5, provides substantially that cities having more than 5,000 inhabitants may adopt or amend their charters by a vote of the people; said charter shall contain no provision inconsistent with the Constitution of the State or general laws there-

of; said city may levy, assess, and collect such taxes as may be authorized by law or by their charter. The Statutes of Texas, article 7269, provide: That in case of an assignment by a party that his taxes shall be a first lien upon all of his property. Article 7272 provides: "That all property owned by any person shall be liable for all taxes to the State and County and the tax collector shall levy upon any personal or real property to be found in the county to satisfy all delinquent taxes, any law to the contrary notwithstanding."

The Charter of the City of Lubbock, article V, § 2: "The tax levied by the governing authority is hereby declared to be a lien, charge and encumbrance upon the property on which the tax is due." Article V, § 4, thereof provides: "The City of Lubbock shall have all other remedies for the levy and collection of city taxes as are given by the Constitution and Statutes of Texas to the State and County for the collection of State and County taxes." Article VII, § 5, provides: "Said City shall have power to regulate the manner and mode of making out tax lists, inventories and appraisements of property therein * * * and to adopt such measures as may be deemed advisable to secure the assessment of all property within the city limits * * * and to do any and all things necessary or proper to render effectual the collection of moneys for taxation."

Ordinance No. 506 of the City of Lubbock adopted on August 10, 1933, section 1, provides: "A lien is hereby created on all property, personal and real, in favor of the City of Lubbock, for all taxes, ad valorem, occupation or otherwise. Said lien shall exist from January 1st in each year until all taxes are paid. Such lien shall be prior to all other claims and no gift, sale, assignment or transfer of any kind or judicial writ of any kind can ever defeat such lien." Section 2, provides: "Said lien for taxes shall attach to all property of the taxpayer owned January 1st, and that subsequently acquired, whether assessed or not." Section 3, provides: "The aforesaid lien shall be prior and superior to all other claims or liens then existing or thereafter arising against said property or the taxpayer."

If Ordinance No. 506 of the City of Lubbock is valid under the Constitution and laws of Texas, then the City of Lubbock is entitled to a first and superior claim upon the funds under consideration for the payment of the taxes due. It was not the purpose and intent of the State of Texas to abridge the power and prerogatives of cities under the home rule amendment, but to confer upon them the same powers that the Legislature had heretofore conferred by special enactment. The various statutory enactments for the State of Texas creating liens were not written with any special reference to each other. We have a statute that gives a lien for taxes. We have a statute that gives a prior lien for labor when the claims are properly filed and registered. We have the landlord's liens and other liens as in the case of mortgages and pledges. Just which of these liens would have priority would perhaps depend upon the facts of a particular case. For instance, a chattel mortgage lien upon property placed in a building becomes superior to the landlord's lien that may afterwards be acquired thereon. It will not be the purpose, however, of this opinion to undertake to pass upon the priority of the various contract and statutory liens recognized by law but will confine itself only to the tax lien of the City of Lubbock.

In the case of In re Brannon (City of Dallas v. Ryan) 62 F.(2d) 959, the Circuit Court of Appeals for the Fifth Circuit held that the Charter of the City of Dallas gave to the city a true general lien for all city taxes, the said charter providing in section 194 that all taxes shall be a lien upon the property upon which they are assessed. This decision of the Circuit Court of Appeals is binding upon us unless there can be shown a distinction. It is insisted that the provisions of the ordinance of the City of Lubbock are inconsistent with the Constitution of the State of Texas and with the general laws enacted by the Legislature of the state. The Brannon Case, 62 F.(2d) 959, supra, upholds the Charter of the City of Dallas giving power now insisted upon for the City of Lubbock. Therefore, no Constitution inhibition can be interposed.

The last and final objection would be: Is the ordinance authorized by the Charter of the City of Lubbock and is the charter and ordinance or either of them inconsistent with the general laws of the State of Texas?

The Statutes of Texas, article 7272, declares that all property real and personal shall be liable for state and county taxes.

We do not understand that the word "inconsistent," as used in the home rule

amendment, necessarily means "different from." For instance, the state might provide one method of collecting taxes and a city might adopt this method and supplement it with other methods without the laws being in conflict. Our idea of the word "inconsistent," as used in the home rule amendment, means "in conflict with" and "repugnant to." And only where the ordinance or charter is repugnant to and in conflict with the state laws and Constitution would it come within the inhibition of the Constitution. For instance, any city ordinance fixing a different or more extensive penalty for crime than that fixed by the laws of the state, or an ordinance·of the city undertaking to repeal any of the laws of the state. But any provision of the charter or any ordinance adopted under the charter, if not inhibited by the Constitution or statutes of the state, would be embraced within the rights and powers of the city government, chartered and operating under the home rule amendment. For instance, the City of San Antonio was within its prerogatives in restricting the operation of motor buses to certain streets and contravened no constitutional or statutory provision and interfered with no private, natural, or inherent right of the bus owner. City of San Antonio v. Fetzer (Tex.Civ.App.) 241 S.W. 1034. The provisions of a city charter for fixing telephone rates by ordinance violates no Constitutional provision. Southwestern Telegraph & Telephone Company v. City of Dallas (Tex.Civ.App.) 131 S.W. 80. The State of Texas has no law regulating telephone rates but that does not inhibit the City of Dallas from enacting such an ordinance.

The City Charter of Lubbock, article VII, § 5, authorizes the said city to regulate the manner and method of assessing and collecting taxes and expressly empowers it to do any and all things necessary and proper to make effectual the collection of money for taxes.

Believing that the home rule amendment of the Constitution, under which the City of Lubbock is chartered, confers upon the city the same powers as those conferred by special enactment of the Legislature in chartering the City of Dallas and, further, believing that the ordinance adopted was within the powers enumerated in the charter, it is the opinion of the court that under the charter and ordinance the City of Lubbock has a first and superior lien for its taxes.